promised that, in the event of its insolvency, the note should at once become payable. It had the right to make the agreement, and, having made it, was in duty bound to carry it out in good faith, the doing of which required the statement of fact made by the defendant's president.

The order should be reversed, with $10 costs of motion and printing disbursements, and the motion denied, with $10 costs. All concur.

---

(21 Misc. Rep. 503.)

## In re HART.

(Supreme Court, Special Term, Kings County. October 26, 1897.)

ELECTIONS—BALLOTS.

> When more than one justice of the supreme court are to be elected, they are to be voted for indiscriminately for the full term, and no one of them can be designated as candidate for successor to any particular justice.

Application by Coleridge A. Hart for a mandamus to compel the secretary of state to certify to the board of elections of the city of Brooklyn that the certificates of nomination of the petitioner by the Prohibition party and an independent body named "Independent Citizens' Organization" for justice of the supreme court in the Second judicial district, filed in his office, are in words "to fill vacancy in place of Calvin E. Pratt, deceased." The secretary of state certified the nomination of the petitioner, but omitted this designation. The contention is that as Calvin E. Pratt, a justice of the supreme court, died on August 3, 1896, the election of his successor at the general election on November 3, 1896, was void, for the reason that such election was "less than three months after the vacancy" occurred, in violation of section 4 of article 6 of the state constitution. Denied.

Coleridge A. Hart, in pro. per.
The Attorney General, opposed.

GAYNOR, J. If the contention of the petitioner be true, that it is in order to elect two justices of the supreme court at the coming election in the Second judicial district, then every voter is free to vote for two justices, and the law will conclusively presume that he knows his rights in that particular, and that he will act and govern himself accordingly. People v. Village of Wappingers Falls, 9 Misc. Rep. 246, 30 N. Y. S. 265; Id., 144 N. Y. 616, 39 N. E. 641. It would follow that the two candidates receiving the highest number of votes would be elected. The certificate by the secretary of state to the officials in each county and city who make up and print the ballots, that the petitioner was nominated to the office of justice of the supreme court, puts the petitioner upon the ballots as a candidate for justice of the supreme court on equal terms with all other nominees for that office. This is all he is entitled to. The designation in his certificates of nomination, that he was nominated "to fill a vacancy in place of Calvin E. Pratt, deceased," was surplusage. There is no way under the law to so classify nominees for justice of the supreme

court. When more than one are to be elected, they are voted for indiscriminately for full terms, and those receiving the highest number of votes are elected. The election law provides for the designation upon the ballots of the particular term each candidate for the same office is running for only in cases where the several terms to be filled are of different length. However a vacancy arises in the office of justice of the supreme court, the election is always for a full term.

The application is therefore denied.

---

(21 Misc. Rep. 499.)

GIBSON v. KNAPP, City Treasurer, et al.

(Supreme Court, Special Term, Kings County. October 26, 1897.)

1. MUNICIPAL CORPORATIONS—INDEBTEDNESS—CONSTITUTIONAL LIMIT—EXCEPTIONS.

Revenue bonds issued under Laws 1884, c. 506, as amended by Laws 1886, c. 366, Laws 1889, c. 433, and Laws 1892, c. 226, providing that bonds, payable in ten years, may be issued each year for the amount of arrears of taxes of the preceding year, and permitting the arrears of one year to be used when collected to purchase bonds issued for the arrears of prior or subsequent years, do not come within the exception in Const. art. 8, § 10, fixing the limit of city indebtedness at 10 per cent. of the assessed value of the real estate of the city, but excepting bonds issued in anticipation of the collection of taxes for amounts contained, or to be contained, in the taxes for the year such bonds are issued, and payable out of such taxes.

2. SAME—TEST OF CONSTITUTIONALITY.

The fact that municipal bonds previously issued are now in excess of the limit of city indebtedness does not render them void, the test being whether they were valid when sold by the city.

3. INVESTMENT OF CITY FUNDS—REVENUE BONDS.

Acts 1895, c. 782, provides for the payment of taxes in arrear at the time of its passage, and for the redemption of tax sales outstanding in which the city was purchaser, and appropriates the money thus received to the payment of revenue bonds theretofore issued, under Laws 1884, c. 506, as amended by Laws 1886, c. 366, Laws 1889, c. 433, and Laws 1892, c. 226, and permits the temporary investment of any portion of said funds not required to pay such past revenue bonds "in the purchase of any other bonds of said city." *Held* to authorize investments in future revenue bonds issued under said Laws 1884, c. 506, as amended, carrying with it the right to sell such bonds.

Action by Charles Gibson against Lucien Knapp, as treasurer of Long Island City, and others, for an injunction against the sale of bonds. On motion to make the injunction permanent. Denied.

F. P. Delafield, for plaintiff.

Foster & Foster, for defendants.

GAYNOR, J. The treasurer of Long Island City advertised for sale $300,000 of revenue bonds of the said city, issued and sold in the years 1896 and 1897, $19,000 of water supply bonds, issued and sold in December, 1895, and $11,000 of general improvement bonds, issued and sold in September, 1896; and they were awarded to the highest bidder. They are all in and belong to the "special sinking fund" of the said city, created by that name by chapter 782 of the Laws of